UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-CR-00210-FDW-SCR

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| JULIAN JARED GILL, | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant's "Motion to Suppress Evidence and for <u>Franks</u> Hearing" (the "Motion"). (Doc. No. 21). The United States filed a response in opposition on June 23, 2023 (Doc. No. 22), and Defendant filed a reply on June 30, 2023 (Doc. No. 25).

This Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and the Motion is now ripe for consideration. The undersigned held a hearing on July 10, 2023, and heard oral arguments from counsel as to whether Defendant made the requisite showing for a <u>Franks</u> hearing.

Having fully considered the record, applicable law, and arguments at the hearing, the undersigned respectfully recommends that Defendant's request for a <u>Franks</u> hearing and the Motion be **DENIED**, as discussed below.

## I. BACKGROUND[1]

### A. Procedural Background

In August 2022, Defendant was charged in a Bill of Indictment for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). (Doc. No. 1). Defendant now files the Motion, wherein he requests a Franks hearing to challenge the affidavit in support of a search warrant of a cell phone seized from Defendant when he was arrested and to suppress evidence found therein. (Doc. No. 21).

### B. Factual Background

On April 12, 2022, Defendant was arrested by Charlotte Mecklenburg Police Department ("CMPD"). Def.'s Mot. Ex. 1 at 5, (Doc. No. 21-1). When Defendant was arrested, law enforcement on the scene at the time of the arrest "seized from the custody" of Defendant a "Blue iPhone 13; model number MLMT3LL/A; serial number W6X5L29DVH" (the "Blue iPhone"). Id. at 4, 6-8. The next day, on April 13, 2022, CMPD Detective Van Almen ("Det. Van Almen") requested a search warrant to search the Blue iPhone. Id. Specifically, the affidavit sought to search the "Blue iPhone 13; model number MLMT3LL/A; serial number W6X5L29DVH" that was "seized from the custody" of Defendant on April 12, 2022. Id. at 3, 7-8. Det. Van Almen

---

[1] The background information stated herein is based on Defendant's submissions in support of his Motion. This includes, but is not limited to: (1) the Blue iPhone Search Warrant, including the accompanying application, probable cause affidavit, and inventory of items seized (Def.'s Mot. Ex. 1, (Doc. No. 21-1)); (2) a portion of Det. Richter's body worn camera footage dated April 12, 2022, when he was at Barret's residence and discussed the 267 Number (Def.'s Mot. Ex. 2, (Doc. No. 21-2)); (3) CMPD's Cyber Crimes Unit Official Report of the search of the Blue iPhone (Def.'s Mot. Ex. 3, (Doc. No. 21-3)); and (4) a text message exchange between Barrett and Defendant referencing the 267 Number that was "recovered from Ms. Barrett's cellular phone" (Def.'s Mot. Ex. 4, (Doc. No. 21-4)). "[T]hese facts have not been proven to a jury and are provided here merely as a summary of the documentary evidence before the Court at this stage of Defendant's case" for purposes of considering the Motion. United States v. Houdersheldt, No. 3:19-00239, 2020 WL 1169757, at *1 n.1 (S.D. W. Va. Mar. 10, 2020).

sought a search warrant to search the Blue iPhone because he believed evidence of an alleged robbery that occurred one week before, and for which Defendant was the suspect, would be found on the Blue iPhone. Id. at 8. The state magistrate judge found probable cause to issue a search warrant for the Blue iPhone 13; model number MLMT3LL/A; serial number W6X5L29DVH (the "Blue iPhone Search Warrant"). Id. at 1.

Det. Van Almen's affidavit in support of the Blue iPhone Search Warrant included the facts of the investigation that supported probable cause to search the Blue iPhone. Specifically, the affidavit stated that Det. Van Almen was investigating an attempted robbery that occurred on April 5, 2022, when Toddrick McFadden ("McFadden") reported to law enforcement that he was robbed at gunpoint. Id. at 3. The affidavit then detailed what McFadden reported to law enforcement, in relevant part, as follows:

> On April 5th, 2022 at 1238 hours the victim [McFadden] reported that he had been robbed at gunpoint by a suspect he knows as Julian in the 1100 block of Vickery Drive.
>
> The victim reported that at approximately 1230 hours he was walking on Vickery Drive from a friend[']s house back to his residence at 1101 Vickery Drive. He was walking on the right side of the road when the suspect pulled up in a silver Cadillac CTS.
>
> The suspect pulled up beside him and told him to "freeze". The suspect was armed with a black Glock looking handgun with a tan extended clip and was pointing the gun at the victim. The victim put his hands up in the air. The suspect opened his car door and reached over and pulled the gun from the victim's holster while he was still pointing his gun at the victim. The suspect then got back into the silver Cadillac CTS and drove away towards Amado.
>
> The victim advised officers that he went to school with the suspect and knows his name is Julian. The victim went back to his house and thought this all might have been a joke. He looked around and found the suspect's phone number under contact "Ratchet". The suspect's phone number is 980-273-[****]. When he tried calling the suspect and could not get a hold of him that is when the victim knew that this robbery was not a joke.
>
> A written statement was taken from the victim.

The 980-273-**** phone number that McFadden provided to law enforcement is referred to herein as the "First 980 Number." Id.

McFadden also provided a photo of the person who allegedly robbed him, Julian. Id. at 3. The affidavit explained that as part of law enforcement's investigation, law enforcement determined that the photograph McFadden showed them was a photograph of Julian Gill, who is now the Defendant in this federal case. Id. at 4. In addition, law enforcement found that the First 980 Number McFadden gave to them was associated with Defendant in several reports to law enforcement, and these reports were enumerated in the affidavit. Id.

The affidavit then described Defendant's arrest on April 12, 2022, when another officer, Detective Richter ("Det. Richter") informed Det. Van Almen that law enforcement located Defendant in a motel room, and Defendant was arrested. Id. at 5. According to the affidavit, a female named Kierra Lockett ("Lockett") had rented the motel room and told law enforcement, among other things, that Defendant "had a gun and described it as having a tan extended clip." Id. at 5. Det. Van Almen arrived at the motel and spoke to Lockett. Id. Lockett similarly told Det. Van Almen, among other things, that Defendant "had a gun with a brown extended clip . . . [and] she knew that the gun was in the room." Id. During a search of the motel room, law enforcement found "a black handgun with a brown extended clip inside the back tank of the toilet." Id. Sometime later, Det. Van Almen interviewed Defendant about the alleged robbery of McFadden.[2] Id. at 5-6. Defendant confirmed that he knew McFadden from school, but denied the robbery, provided a different explanation of the facts, and said that McFadden lied about the robbery because he was mad at Defendant. Id. at 6. Defendant also denied "knowing [about] or

---

[2] According to Det. Van Almen's affidavit, Defendant "had signed Miranda and agreed to speak" with officers before meeting with Det. Van Almen. Def.'s Mot. Ex. 1 at 5-6.

possess[ing] the firearm that was located in the tank of [the] toilet inside the motel room." Id. at 5.

As part of the instant Motion, Defendant alleges that law enforcement "had been informed that [Defendant] was using a different cell phone number at the time [law enforcement] applied for the [Blue iPhone Search Warrant] but they omitted that information from the application," and that law enforcement did not investigate Defendant's phone numbers further. Def.'s Mot. at 1. It is on this basis that Defendant argues he is entitled to a Franks hearing. Id. In support of this argument, Defendant provided Det. Richter's body worn camera footage from the morning of April 12, 2022, just hours before Defendant's arrest, during which Det. Richter had a discussion with Defendant's female friend ("Barrett"). Def.'s Mot. at 2; Def.'s Mot. Ex. 2, (Doc. No. 21-2). During the discussion, Det. Richter asked Barrett if she ever "texted back and forth" with Defendant, and Barrett confirmed she did exchange text messages with Defendant. Def.'s Mot. Ex. 2 at 06:44-07:30. Barrett and Det. Richter reviewed a text message exchange between Defendant and Barrett on Barrett's cell phone, below:



Id. at 07:30-8:20; Def.'s Mot. Ex. 4, (Doc. No. 21-4). Det. Richter took a picture of the above text message exchange including the 267-854-**** phone number (the "267 Number"). Def.'s Mot. Ex. 2 at 07:55-08:15. Barrett and Det. Richter engaged in the following discussion about the text message exchange:

> Barrett: [*Reading the phone*] "This somebody number. That's me, pretty much like, f[***] you. I was just cussing him out."

---

[3] A redacted version of the text message exchange has been included herein.

> Det. Richter: [*Asked if he could take a picture of "that number" and asking about the content of the text message stating "send me the 267*,] "what's that mean?"
>
> Barrett: "what?"
>
> Det. Richter: "it says, 'send me the 267'"?
>
> Barrett: "That's this number."
>
> Det. Richter: "Is that his new number?"
>
> Barrett: "I don't know who number that is. He had, um, I had blocked him off my phone. Cause we had got into it and I had blocked him off my phone . . . ."

Id. at 07:55-08:29.

Ultimately, after the Blue iPhone Search Warrant was issued, a search of the Blue iPhone was completed. Def.'s Mot. Ex. 3, (Doc. No. 21-3). According to CMPD's report, the search was of a Blue iPhone 13 with model number MLMT3LL/A and serial number W6X5L29DVH—an identical match to the serial and model number listed in Det. Van Almen's affidavit and authorized by the Blue iPhone Search Warrant. Id.

CMPD's report following the search of the Blue iPhone shows that the Blue iPhone's telephone number was neither the First 980 Number nor the 267 Number. Id. Instead, the number associated with the Blue iPhone was telephone number 980-785-**** (the "Second 980 Number"). Id.

## II. DISCUSSION

The Fourth Amendment to the U.S. Constitution safeguards the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable search and seizures" and requires that no warrant issue "but upon probable cause, supported by oath or affirmation," and "particularly describing the place to be searched and the persons or things to be seized." U.S. CONST. amend IV; see also United States v. Lull, 824 F.3d 109, 115 (4th Cir. 2016); United States

v. Glass, No. 5:21-CR-00060-KDB-DSC, 2023 WL 2844365, at 3 (W.D.N.C. Apr. 7, 2023). "Ordinarily, when a search violates the Fourth Amendment, the fruits thereof are inadmissible under the exclusionary rule, 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect.'" United States v. Doyle, 650 F.3d 460, 466-67 (4th Cir. 2011) (quoting United States v. Calandra, 414 U.S. 338, 348 (1974)). However, a good faith exception to the exclusionary rule applies when evidence is obtained pursuant to a search warrant issued by a neutral magistrate judge if the officer's reliance on the warrant was objectively reasonable. Id. at 467 (quoting United States v. Leon, 468 U.S. 897, 922 (1984)). "[S]earches executed 'pursuant to a warrant will rarely require any deep inquiry into reasonableness.'" Id. (quoting Leon, 468 U.S. at 922).

A defendant "is generally not entitled to challenge the veracity of a facially valid search warrant affidavit by way of a motion to suppress." United States v. Pulley, 987 F.3d 370, 376 (4th Cir. 2021) (citing United States v. Allen, 631 F.3d 164, 171 (4th Cir. 2011)). In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court "carved out a narrow exception to this rule, whereby an accused is entitled to an evidentiary hearing on the veracity of statements in the affidavit" under certain circumstances. Id.; United States v. Clenney, 631 F.3d 658, 663 (4th Cir. 2011). First, the defendant must make the "rigorous showing necessary to obtain a [Franks] hearing." Id. Under this "rigorous showing," the defendant must make a "substantial preliminary showing" that the affiant (1) made a false statement in the affidavit knowingly and intentionally, or with reckless disregard for the truth – referred to as the "intentionality" prong; and (2) the allegedly false statement must be "necessary to the finding of probable cause" – referred to as the "materiality" prong. Franks, 438 U.S. at 155-56; United States v. White, 850 F.3d 667, 672-73 (4th 2017).

"If the district court finds that a defendant has made this threshold showing, it must hold a Franks hearing to develop evidence on the affidavit's veracity." United States v. Haas, 986 F.3d 467, 474 (4th Cir. 2021). "If a Franks hearing is appropriate and an affiant's material perjury or recklessness is established by a preponderance of the evidence, the warrant 'must be voided' and evidence or testimony gathered pursuant to it must be excluded." United States v. Colkley, 899 F.2d 297, 300 (4th Cir.1990) (quoting Franks, 438 U.S. at 156). Such a warrant "is not subject to the good-faith exception to the exclusionary rule."[4] Id.

### A. Franks Intentionality Prong

First, a defendant requesting a Franks hearing must make a showing that the affiant made a false statement in the affidavit knowingly and intentionally, or with reckless disregard for the truth. Franks, 438 U.S. at 155-56. A "presumption of validity" exists "with respect to the affidavit supporting . . . warrant[s]." Id. at 171. As such, the defendant must come forward with more than conclusory allegations, and "should include affidavits or other evidence to overcome the presumption of the warrant's validity." Clenney, 631 F.3d at 663 (quotation marks and alterations omitted); Franks, 438 U.S. at 171 (stating that the allegations "must be supported by more than a mere desire to cross-examine" and should be accompanied by an offer of proof, including identifying the specific portions of the affidavit that defendant claims are false). Mere negligence, innocent mistakes, or imprecision in drafting an affidavit are insufficient to obtain a Franks hearing. Franks, 438 U.S. at 171; Colkley, 899 F.2d at 301; United States v. Moody, 931 F.3d

---

[4] As an initial matter, the Government argues that Defendant's Motion is untimely. However, the Court need not consider whether the Motion was untimely because, assuming *arguendo* the Motion is timely, for the reasons stated herein, the undersigned concludes that Defendant is not entitled to a Franks hearing and respectfully recommends that the Motion be denied. See Moody, 931 F.3d at 371 ("Like the district court, however, we decline to decide whether the motion was timely and instead affirm on the merits.").

366, 371 (4th Cir. 2019) (observing that courts must consider that "warrant affidavits are 'normally drafted by nonlawyers in the midst and haste of a criminal investigation'" and should be interpreted in a "commonsense manner." (quoting United States v. Ventresca, 380 U.S. 102, 108 (1965))).

Here, Defendant concedes that the basis of the Motion is not premised on an affirmative false statement in the affidavit. Rather, Defendant's argument centers around the omission of information in the affidavit related to Defendant's use of another phone number. Courts have observed that "the Franks threshold is even higher for defendants making claims of omissions rather than affirmative false statements." Clenney, 631 F.3d at 664. "The defendant's burden in demonstrating intentionality in the context of an omission is high 'because an affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation.'" Pulley, 987 F.3d at 376-77 (quoting Lull, 824 F.3d at 115). "Merely identifying factual omissions is insufficient." Clenney, 631 F.3d at 664; Colkley, 899 F.2d at 301 ("Franks clearly requires defendants to allege more than 'intentional' omission in this weak sense. The mere fact that the affiant did not list every conceivable conclusion does not taint the validity of the affidavit.").

Defendant must show that the omissions were "'*designed to mislead*, or . . . made in *reckless disregard of whether they would mislead*.'" Clenney, 631 F.3d at 664-65 (emphasis in original) (quoting Colkley, 899 F.2d at 301). This is a subjective inquiry, "the particular affiant must have been subjectively aware that the false statement or omission would create a risk of misleading the reviewing magistrate judge and nevertheless chose to run that risk." Pulley, 987 F.3d at 377. Indeed, "[w]hat the officer-affiant should have known does not matter if he did not in fact know." Id.

1. <u>Detective Van Almen's Knowledge</u>

Defendant must not only show an omission from the affidavit, but he must also make a "substantial preliminary showing" that the omission was designed to mislead or made in reckless disregard of whether it would mislead the magistrate judge. <u>Colkley</u>, 899 F.2d at 301. Here, Defendant has not offered anything to show, or even claimed, that Det. Van Almen, who requested and attested to the information in the affidavit, actually knew about the 267 Number or Defendant's use of another phone number before the Blue iPhone was seized. The body worn camera footage was from Det. Richter's body worn camera, and there is nothing before the Court indicating that Det. Van Almen was present for the interaction with Barrett. Nor is there any suggestion that Det. Richter told Det. Van Almen about the interaction with Barrett or the 267 Number. Det. Van Almen must "have been subjectively aware that the false statement or omission would create a risk of misleading the reviewing magistrate judge and nevertheless chose to run that risk." <u>Pulley</u>, 987 F.3d at 377. What Det. Van Almen "should have known does not matter if he did not in fact know." <u>Id.</u>

Defendant seems to argue in his reply that he need not make a showing that Det. Van Almen, as opposed to other officers in the same investigation, knew about the 267 Number or Defendant's use of any other phone number before his arrest because it would incentivize officers not involved in the drafting of a warrant application to present untruthful, misleading, and/or incomplete information to the affirming officer. <u>Id.</u> at 6. To the contrary, this is precisely the limit that <u>Franks</u> and its progeny created. In <u>Pulley</u>, the defendant made a similar argument that information known by one detective in the investigation should be imputed to the affiant under the collective knowledge doctrine. 987 F.3d at 379. The Fourth Circuit rejected this argument, explaining "[t]he <u>Franks</u> inquiry is designed to identify intentionality or reckless disregard on the

part of the affiant. An officer who does not personally know information cannot intentionally or recklessly omit it, and therefore the collective knowledge doctrine cannot apply in the Franks context." Id. (declining to impute information to affiant that another investigating officer heard in a recording suggesting somebody other than defendant discarded clothing); see also United States v. Miller, No. 6:11-CR-00004, 2012 WL 1414853, at *4 (W.D. Va. Apr. 24, 2012), *aff'd*, 534 Fed. App'x 204 (4th Cir. 2013) (opining, before Pulley, that if an officer deliberately withheld material information to the determination of probable cause from an affiant such deliberate withholding might be sufficient to serve as a basis for exclusion).

Based on all of this, Defendant has not made a showing that Det. Van Almen knew of the 267 Number or Defendant's use of any other phone number prior to his arrest. Consequently, Defendant has not made a substantial preliminary showing that Det. Van Almen intentionally or with reckless disregard to mislead the magistrate judge omitted the 267 Number or Defendant's use of any other phone number prior to his arrest.

2. Detective Van Almen's Intentionality or Reckless Disregard

Even if Defendant had made some showing that Det. Van Almen knew about the 267 Number or Defendant's use of any other phone number before his arrest, without more, his knowledge of the information and its omission does not meet the high burden needed to demonstrate intentionality in the context of an omission. Pulley, 987 F.3d at 376-77. Notably, the affidavit did not represent that the Blue iPhone's telephone number was the First 980 Number. Rather, as noted above, the affidavit simply restated that McFadden, the alleged victim, communicated to law enforcement the contact number he had for Defendant in his phone, which was the First 980 Number. The only other reference to the First 980 Number was in connection with references to law enforcement reports that had been pulled by the Detective and included in

the Affidavit. Defendant has not presented any evidence to suggest Det. Van Almen omitted the information related to Defendant's use of other phone numbers with intention or reckless disregard. Indeed, Defendant's Motion states only twice[5] that "officers knowingly or recklessly . . . omitted information," in a conclusory manner, but does not explain how the claimed omissions were knowingly or recklessly. (Doc. No. 21). Defendant's reply similarly does not address this issue and does not even mention the words "intentional" or "reckless." (Doc. No. 25). At oral argument, the Court also gave Defendant an opportunity to further address this prong, but Defendant did not present any details about how Det. Van Almen omitted information with intent or reckless disregard. Considering all of this, the Court finds that Defendant has failed to make the requisite showing necessary for a Franks hearing.

### B. Franks Materiality Prong

With respect to the materiality prong, "an omission must do more than potentially affect the probable cause determination: it must be 'necessary to the finding of probable cause.'" Colkley, 899 F.2d at 301 (quoting Franks, 438 U.S. at 156). In other words, in order to be material, the inclusion of the omitted information in the affidavit must defeat the probable cause for the warrant. Id. "Omitted information that is potentially relevant but not dispositive is not enough to warrant a Franks hearing." Id. "In determining whether the affidavit with the omitted information would be supported by probable cause" courts apply the "totality of the circumstances" test. Id. at 301-02. The totality of the circumstances test requires "a practical, commonsense decision whether, given all the circumstances set forth in the affidavit, there is probable cause to believe the suspect committed an offense," Id., or "there is a fair probability that contraband or evidence

---

[5] The Motion states the words reckless and intentional more than twice throughout, but the other references are used when explaining the legal standard. (Doc. No. 21).

of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983); Allen, 631 F.3d at 172.

Even assuming that Defendant can make the requisite showing of intentionality, the Court finds Defendant did not demonstrate that the omitted information is material to the probable cause determination. When considering materiality, the Court notes that the device the state magistrate judge authorized law enforcement to search was identical to the device that was actually searched. Det. Van Almen requested a warrant to search a "Blue iPhone 13; model number MLMT3LL/A; serial number W6X5L29DVH" that was "seized from the custody" of Defendant at the time of his arrest. Def.'s Mot. Ex. 1 at 3. The Blue iPhone Search Warrant authorized the search of a "Blue iPhone 13; model number MLMT3LL/A; serial number W6X5L29DVH." Id. at 1. A "Blue iPhone 13; model number MLMT3LL/A; serial number W6X5L29DVH" was the device searched pursuant to the Blue iPhone Search Warrant. Def.'s Mot. Ex. 3.

Only one week after the alleged robbery, Defendant was found in a motel room with a gun hidden in the toilet tank that matched the description of the gun used during the alleged robbery, specifically, a black handgun with a brown or tan extended clip. Lockett told law enforcement that the gun was Defendant's gun.[6] In addition to the gun, the affidavit set forth several other reasons probable cause existed to search the Blue iPhone found on Defendant after his arrest,

---

[6] Although Defendant does not appear to argue that the claimed omissions would defeat probable cause to believe Defendant committed the alleged robbery, to the extent he does, the Court disagrees. The affidavit provided ample facts to support probable cause in several ways including, according to Det. Van Almen's affidavit, McFadden's identification of Defendant as the perpetrator including a photograph of Defendant, the vehicle involved in the alleged robbery was linked to Defendant in at least four other CMPD reports, and the gun found in the motel and that Lockett stated was Defendant's gun matched the description of the gun used during the alleged robbery. Considering the totality of the circumstances, these facts, even without Defendant's connection to the First 980 Number would have established probable cause necessary to support the warrant.

including that McFadden knew Defendant and identified Defendant as the perpetrator, McFadden provided a photograph of Defendant, and Defendant's link to the vehicle used during the alleged robbery. Only one week after the alleged robbery, law enforcement found the Blue iPhone in the Defendant's possession. Det. Van Almen averred that he "believe[d] that this cellular telephone [the Blue iPhone] was used during the commission of Armed Robbery and may have images, text messages, and telephone numbers related to the commission of this offense." Def.'s Mot. Ex. 1 at 8. The magistrate judge concluded this information established probable cause.

Notably, the Blue iPhone Search Warrant did not authorize the search of a phone specifically assigned to the First 980 Number or any other telephone number, nor did it authorize Det. Van Almen to obtain telephone records associated with the First 980 Number or any other telephone number from a third-party such as a telephone carrier.

The Court also observes that Defendant's argument that information related to the 267 Number should have been included, but was omitted, seems to be a *non sequitur* argument. In other words, the Blue iPhone searched also was not associated with the 267 Number. If the 267 Number had been included in the affidavit, Defendant might then be back before this Court making a similar argument that the 267 Number was not the one associated with the Blue iPhone seized from Defendant when he was arrested, and that the inclusion of the 267 Number was misleading.

Based on all of this, the Court finds probable cause would not have been defeated by the inclusion in the affidavit of Det. Richter's interaction with Barrett including Defendant's use of the 267 Number or Defendant's use of any other phone number. It also finds Defendant's argument unpersuasive that law enforcement should have further investigated Defendant's phone

number before seizing the Blue iPhone.[7]  Defendant has not made a substantial preliminary showing that these omissions would be material.[8]  The Court is dubious as to whether these omissions were even relevant to the magistrate judge's probable cause determination.

Other analogous cases have reached similar conclusions when considering materiality.  For example, in United States v. Christian, the defendant challenged the veracity of an affidavit supporting a search warrant to obtain cell phone location information.  No. 1:16-cr-207 (LMB), 2017 WL 2274328, at *11-12 (E.D. Va. May 24, 2017).  The defendant argued he was entitled to a Franks hearing in part because law enforcement omitted two other phone numbers that defendant used to communicate with co-conspirators.  Id.  However, the court found the omission of other phone numbers used by the defendant was not material because:

> it is common knowledge that drug dealers routinely use numerous phones. Explicitly identifying two other phone numbers used by [the defendant] to communicate with co-conspirators would not have undercut probable cause.  This information was not material, and there is no reason to infer that it was omitted with intent to deceive.

Id.  This point is even more salient in this case where Det. Van Almen was not seeking information associated with a particular phone number, but was requesting to search a cell phone that was already seized from Defendant after his arrest only a week after the alleged robbery that Det. Van

---

[7] Defendant does not allege or argue that law enforcement knew about the Second 980 Number, the phone number actually associated with the Blue iPhone, until the Blue iPhone was searched. During oral argument, Defendant argued that before requesting the search warrant law enforcement should have called the First 980 Number to confirm whether the Blue iPhone rang or checked the settings.  As to the settings argument, the Court notes that law enforcement could not access the Blue iPhone without Defendant's consent or a warrant.  Second, Defendant did not put forth any caselaw to support the position that would mandate law enforcement during an investigation to call a cellphone with a number believed to be associated with Defendant to see if it rings.

[8] The Court's materiality conclusion is bolstered by the fact that a state magistrate judge also issued a search warrant for Defendant's DNA which evidence was "turned in under" the robbery case number.  Def.'s Mot. Ex 1 at 7.

Almen was investigating. See also United States v. Marion, 547 Fed. App'x 283, 286-87 (4th Cir. 2013) (affirming denial of a Franks hearing because the affidavit supported probable cause where, among other things, the defendant argued that the affiant erroneously stated a phone number was the landline of the residence searched when it was actually a cell phone number, was not defendant's cell phone number, and was located in another part of the state than the residence searched); United States v. Thorne, 548 F. Supp. 3d 70, 134-35 (D.D.C. 2021) (concluding defendant failed to meet both intentionality and materiality prongs where affidavit contained error as to which cell phone number was defendant's personal cell phone number); United States v. Shaw, No. 3:21cr144 (DJN), 2022 WL 1143524, at *5-9 (E.D. Va. Apr. 18, 2022) (denying request for Franks hearing where, among other things, affidavit incorrectly stated the wrong floor and door color of the apartment to be searched, incorrect year, make and model of the vehicle observed during surveillance and searched, and omitted information about the apartment building and related surveillance).

In sum, under a "practical, commonsense" view of the circumstances, the Court finds that the omitted information would not defeat probable cause that contraband or evidence of the alleged robbery would be found on the Blue iPhone that Defendant possessed when arrested a week later. Illinois v. Gates, 462 U.S. 213, 238 (1983).

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersign concludes that Defendant failed to make a substantial preliminary showing to meet either of the Franks intentionality or materiality requirements. Accordingly, the undersigned respectfully recommends that Defendant's request for a Franks hearing and to suppress evidence in "Motion to Suppress Evidence and for Franks Hearing" (Doc. No. 21) be **DENIED**.

## IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Criminal Procedure 59, written objections to the proposed findings of fact, conclusions of law, and recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Fed. R. Crim. P. 59(b); Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id.; United States v. Midgette, 478 F.3d 616, 621-22 (4th Cir. 2007). "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting Midgette, 478 F.3d at 622).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and to the Honorable Frank D. Whitney.

**SO RECOMMENDED**.

Signed: July 20, 2023

Susan C. Rodriguez
United States Magistrate Judge